**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARLOS SUBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:22-CV-186 RWS |
| | ) | |
| ST. LOUIS COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of self-represented plaintiff Carlos Antwone Suber for leave to commence this action without prepayment of the required filing fee. Also before the Court are several motions brought by plaintiff, including a motion to stay this action, a motion for preliminary injunction, a motion for discovery, as well as a motion for appointment of counsel. Having reviewed the motions, as well as the financial information submitted in support of the motion to proceed *in forma pauperis*, the Court will grant the motion to proceed *in forma pauperis* and assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss this action as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court will additionally stay and administratively close this action pursuant to the Supreme Court case of *Wallace v. Kato*, 549 U.S. 384 (2007), based on the pendency of an underlying criminal case against plaintiff arising out of the same facts. Plaintiff's remaining motions will be denied at this time.

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a *certified* prison account statement. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a

complaint states a plausible claim for relief is a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915,

the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir.

1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007);

*Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of

an allegation is discernible, the district court should construe the plaintiff's complaint in a way

that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*,

795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to

allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623

F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004)

(refusing to supply additional facts or to construct a legal theory for the self-represented

plaintiff).

**Background**

To understand the allegations of plaintiff's complaint, some background on plaintiff's

criminal history with the Missouri state courts is necessary. Plaintiff is currently being held in St.

Louis County Justice Center.

Independent review on Missouri Case.net, the State of Missouri's online docketing

system, shows that plaintiff was charged with resisting arrest by fleeing – creating a substantial

risk of serious injury/death to a person on July 28, 2021. *State v. Suber*, No. 21SL-CR03349 (21st

Judicial Circuit, St. Louis County Court). In an Information filed in the case on March 16, 2022,

the State of Missouri alleged:

> on or about February 17, 2021, in the County of St. Louis, State of Missouri,
> Detectives Joe Brockmeier and Tyler Italiano along with other Florissant officers,
> were conducting a lawful stop of Carlos Suber, and the defendant knew or
> reasonably should have known that the officers were attempting to, make a lawful

stop, and, for the purpose of preventing the officers from effecting the lawful stop, resisted the lawful stop of defendant by fleeing from the officers and defendant fled in such a manner that created a substantial risk of serious physical injury or death to Detective Italiano in that defendant drove his fleeing vehicle directly at Det. Italiano who had to leap to safety to avoid the collision.

*State v. Suber*, No. 21SL-CR03349-01 (21st Judicial Circuit, St. Louis County Court). Plaintiff waived his arraignment on April 19, 2022. The Court reduced bond on June 10, 2022, to $10,000, with the condition of GPS monitoring added, to be installed within 48 hours of plaintiff's release from custody. The next scheduling conference in plaintiff's criminal action is currently scheduled for August 24, 2022.

On October 22, 2021, a criminal Complaint was filed against plaintiff charging him with domestic assault in the first degree, two counts of armed criminal action, unlawful use of a weapon and unlawful possession of a firearm. *State v. Suber*, No 21SL-CR04613 (21st Judicial Circuit, St. Louis County Court). A grand jury Indictment was filed on November 17, 2021, charging plaintiff with the same five charges. The Indictment alleged:

On or about October 21, 2021…[plaintiff] shot at C.B., and such conduct was a substantial step toward the commission of the crime of attempting to kill or cause serious physical injury to C.B. and was done for the purpose of committing such assault, and C.B. and the defendant were family or household members in that C.B. and the defendant were adults who had been in a continuing social relationship of a romantic or intimate nature.
…
[plaintiff]committed the foregoing felony of Domestic Assault in the fist degree by, with and through, the knowing use, assistance and aid of a deadly weapon.
…
on or about October 21, 2021…[plaintiff], knowingly shot a firearm at a 2017 Mercedes G25
…
[plaintiff] committed the foregoing felony of Unlawful Use of a Weapon by, with and through, the knowing use, assistance and aid of a deadly weapon.
…
on or about October 21, 2021…the [plaintiff] knowingly possessed a 9-millimeter handgun, a firearm, and on January 14, 2010, the [plaintiff] was convicted of the felony of Assault in the first degree in the Circuit Court of St. Louis County, Missouri.

*State v. Suber*, No. 21SL-CR03349-01 (21st Judicial Circuit, St. Louis County Court). Plaintiff

waived his right to counsel in his criminal proceeding, however on or about May 26, 2022, new

counsel for plaintiff entered her appearance.

The Court reduced bond on June 10, 2022, from $175,000 to $60,000, home plan to be

approved by the court before release from custody. The next scheduling conference in plaintiff's

criminal action is currently scheduled for September 30, 2022.

### The Complaint

Plaintiff filed his complaint on the Court's prisoner civil rights complaint form, alleging

claims against twenty-two (22) defendants: (1) St. Louis County; (2) City of Florissant; (3)

Timothy Fagan (Florissant Police Chief); (4) Florissant Anti-Crime Unit; (5) Tom Schnieder

(Mayor, City of Florissant); (6) Joseph Brockmeier (Detective, Florissant Police Dept.); (7)

Dustin Chandler (Florissant Police Dept.); (8) Tyler Italiano (Detective, Florissant Police Dept.);

(9) Peggy Fowler (Records Technician, Florissant Police Dept.); (10) Unknown Bussen (Task

Force Officer, United States Postal Service (USPS)); (11) Steve Beekman (Police Officer,

Florissant Police Dept.); (12) United States Postal Service; (13) Karen Goodwin (Custodian of

Records, Florissant Police Dept.); (14) John Doe (Night Jailer, Florissant Police Dept.); (15)

Nicole Zellweger (Judge); (16) Herbert Benson (Director, St. Louis County Justice Center); (17)

Unknown Medical Staff at St. Louis County Justice Center); (18) Timothy Lowery (Chief,

Florissant Police Dept.); (19) Jane Doe (Night Jailer, Florissant Police Dept.); (20) Anthony

Mocca (Sergeant); (21) United States Postal Service Task Force; and (22) Florissant Police Dept.

Plaintiff sues defendants in their individual and official capacities.

Plaintiff alleges federal question jurisdiction over this matter, and that this is a suit

against a federal official and a federal agency. He alleges that his claims arise under several civil

rights statutes: 42 U.S.C. §§ 1981, 1982, 1983, 1985 and 1986.  Plaintiff purports that this Court also has jurisdiction under the "1st, 4th, 5th, 6th, 8th & 14th Amendments" of the Constitution.

As to Florissant police officers Brockmeier, Chandler, Mocca and Italiano (purported members of the Anti-Crime Unit), plaintiff alleges that these officers engaged in a conspiracy with a Task Force Officer from the United States Postal Service, Unknown Bussen, to surveil a certain residence (which plaintiff allegedly frequented) for suspicious packages.

Plaintiff alleges that on February 17, 2021, Brockmeier, Chandler, Italiano and Mocca purportedly observed plaintiff exit the residence and get into a car. At that time, Brockmeier, Chandler, Italiano and Mocca attempted to stop plaintiff in a traffic stop, however, plaintiff purportedly failed to stop, and a police chase resulted. Plaintiff claims that a "deflation device" was used on the car he was "fleeing" in, but no one was captured. However, a warrant was issued for plaintiff's arrest relative to the car chase. On February 24, 2021, plaintiff was "picked up" by Detective Steven Beekman out of St. Louis County Jail where plaintiff was incarcerated on "other charges."[1]

Plaintiff asserts that when he was brought to Florissant Police Department for questioning, defendants Brockmeier, Chandler, Mocca, Italiano and Beekman allegedly "conspired to arrest" plaintiff. They, along with Chief Lowery[2], requested that plaintiff apologize to defendant Italiano for purportedly almost running him over, presumably during the February 17, 2021, car chase where defendant Italiano was tasked with deploying the deflation device. When plaintiff told the detectives that he had not almost run defendant Italiano over with his

---

[1]Plaintiff fails to indicate in the complaint the charges he was incarcerated under at St. Louis County Jail.

[2]Plaintiff at times refers to the Chief of Police for the City of Florissant as Timothy Lowery, while at other times he refers to him as Timothy Fagan. For ease of reference the Court will refer to him as Timothy Lowery, as this appears to be his proper name.

vehicle, plaintiff was told by defendant Chandler that he had just called his parole officer and asked that a hold be placed on plaintiff.

Plaintiff asserts that Detectives Chandler and Brockmeier told plaintiff that they were confiscating his phone.[3] When plaintiff asked why his phone was being taken, and on what legal grounds, he was told by defendants Brockmeier and Chandler that they would say plaintiff volunteered his phone. Plaintiff asserts that he asked both the day and night property clerks, at the Florissant Jail for a property receipt for his belongings, and the property bag was left open and there was no receipt for his phone.

Plaintiff asserts that he was falsely arrested on a trumped-up charge by defendants Brockmeier, Chandler, Mocca, Italiano Beekman and Lowery, falsely imprisoned in the Florissant Jail and that his phone was unlawfully seized. He asserts that he was denied a phone call to reach out to counsel after he was unlawfully arrested. However, he does not provide any factual information relative to his alleged request for a phone call.

For relief, plaintiff seeks monetary damages.

## Discussion

### A. Conspiracy Claims

Plaintiff alleges federal jurisdiction exists over this matter based on the suit naming federal defendants. However, the only federal defendants in this action are the United States Postal Service and the United States Postal Service Task Force, and plaintiff has not made any allegations against these two defendants.[4]

---

[3]It is not entirely clear how or why plaintiff had his phone with him at the time he was transferred from St. Louis County Jail to Florissant Police Department.

[4]Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). Unfortunately,

Plaintiff alleges that defendant Unknown Bussen was a member of the Postal Service Task Force. Plaintiff's only allegation against defendant Bussen is that he engaged in a conspiracy with defendant Florissant Police Officers Brockmeier, Chandler, Italiano and Mocca to fabricate evidence to allow these defendants to have "probable cause" so that they could subject plaintiff to unlawful arrest and false imprisonment.[5] The United States Postal Service appears to have been named as defendant Bussen's employer.[6]

Despite this allegation of "conspiracy" plaintiff has failed to allege that Bussen was present at the alleged residence in Florissant on February 17, 2021, or that he engaged in the car chase following plaintiff on that same date. Plaintiff has also not alleged that defendant Bussen was present at the Florissant Police Department on February 24, 2021, when plaintiff was arrested. Plaintiff's allegations against defendant Bussen also wholly lack a basis for his allegations of "conspiracy" with the other named defendants. Accordingly, plaintiff has failed to allege that Bussen, or his employer the United States Postal Service, engaged in a constitutional violation against him.

---

plaintiff has not alleged that the United States Postal Service or the United States Postal Task Force engaged in any wrongdoing. Therefore, they are subject to dismissal in this action.

[5]Plaintiff asserts that Unknown Bussen, an investigator with the United States Postal Service, conspired with the City of Florissant defendants, to fabricate evidence to allow defendants to have "probable cause," subjecting him to unlawful arrest. However, plaintiff fails to articulate exactly what the fabricated probable cause was, or how defendant Bussen interacted with the other defendants in this action relative to the conspiracy. Indeed, plaintiff has already indicated that the Florissant Police Officers arrested him relative to his actions from the car chase and his failure to stop.

[6]Additionally, to the extent plaintiff is attempting to sue defendant Bussen under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2679, a federal employee is absolutely immune from suit for common law claims of tortious conduct occurring within the scope of his employment. *See United States v. Smith*, 499 U.S. 160, 166 (1991). Although the United States would be the properly named defendant in this action, complete exhaustion of administrative remedies is required before the judicial process can be invoked. *McNeil v. United States*, 508 U.S. 106, 112 (1980). Additionally, exhaustion of administrative remedies is a jurisdictional prerequisite to a FTCA lawsuit. *Porter v. Fox,* 99 F.3d 271, 274 (8th Cir. 1996). That is, before bringing an action against the United States, a plaintiff must present his claim to the appropriate federal agency, and the agency must make a final decision on the matter. *Bohac v. Walsh,* 386 F.3d 859, 861 (8th Cir. 2004). This Court lacks jurisdiction over any tort claims against the United States until exhausted at the agency level.

Plaintiff has also failed to properly allege a *conspiracy* by the remaining defendants to either "surveil" a residence he frequented or agree to unconstitutionally arrest him on February 24, 2021.

To allege a conspiracy, a plaintiff must allege, among other things, a meeting of the minds among the conspirators "sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 798-99 (8th Cir. 2013). Plaintiff provides no factual support for any meeting of the minds or agreement between the defendants on either February 17, 2021, to unconstitutionally surveil a residence he frequented or on February 24, 2021, to unconstitutionally arrest him for false charges.

Plaintiff's bare assertion that there must have been a conspiracy to violate his rights because the Florissant police officers engaged in a car chase with him on February 17, 2021, is not sufficient to state a conspiracy claim. *See Iqbal*, 556 U.S. at 678 (to state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements").

Therefore, the Court finds no conspiracy claim against: Unknown Bussen; the United States Postal Service; the United States Postal Service Task Force; Steve Beekman; Joseph Brockmeier; Dustin Chandler; Tyler Italiano; Timothy Lowery; or Anthony Mocca.

## B.  Claims Against Karen Goodwin and Peggy Fowler

Plaintiff alleges that Records Technician Peggy Fowler, as well as Karen Goodwin, the Custodian of Records, failed to preserve "records dispatch/audio," demonstrating a lack of training and supervision. Plaintiff does not elaborate on exactly what these defendants were supposed to have preserved with regard to any "audio" records or "dispatch recordings." He alleges only that the matters were in "key dispute."

Plaintiff's allegations fail to state a claim upon which relief may be granted and are subject to dismissal. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). "To be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights." Plaintiff's failure to articulate exactly what defendants Goodwin and Fowler did or did not do to violate his constitutional rights is fatal to his claims against these two defendants. As such, his claims against them are subject to dismissal.

### C.  First Amendment Claims

Plaintiff additionally attempts to argue that defendants Brockmeier, Chandler, Mocca, Italiano, Beekman and Lowery violated his First Amendment rights to engage in protected speech. Plaintiff has failed, however, to identify the alleged "speech" that was infringed upon or elaborate as to how defendants violated his rights by unlawfully interfering with his alleged speech.

Plaintiff's failure to articulate exactly what the protected activity was that he purportedly engaged in, and which defendant allegedly denied him his First Amendment rights, is detrimental to his claim. This claim is also subject to dismissal.

### D.  Fifth and Sixth Amendment Claims

Plaintiff claims that defendants violated his Fifth Amendment rights by forcing him to "be a witness against himself." Plaintiff fails to elaborate on his statement except he lists the following with respect to his claim: "car, basement, interrogation room, hallway, back in basement."

"The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, requires that [n]o person ... shall be compelled in any criminal case to be a witness against himself.'" *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (quoting U.S. Const. amend. V).

"Freedom from compulsion lies at the heart of the Fifth Amendment and requires us to assess whether a suspect's decision to speak was truly voluntary." *Missouri v. Seibert*, 542 U.S. 600, 624 (2004) (O'Connor, J. dissenting). The Court has created "prophylactic rules designed to safeguard the core constitutional right protected by the Self–Incrimination Clause." *Chavez*, 538 U.S. at 770. These rules include the *Miranda* warnings.[7] Plaintiff has failed to assert that he was not provided the *Miranda* warnings by defendants. And even if he did allege such a claim, a violation of the prophylactic rules described in *Miranda v. Arizona*, cannot provide a basis for a claim under 42 U.S.C. § 1983. *See Vega v. Tekoh*, --- S.Ct. ---2022 WL 2251304, *9 (June 23, 2022).

Similarly, plaintiff seeks to recover under § 1983 based on the allegation that his Sixth Amendment rights were violated. In his complaint he states that he was denied the right to a "free phone call." However, plaintiff does not articulate when this alleged violation occurred, nor does he purport as to why he believes the lack of a "free phone call" to be a Sixth Amendment violation.

"The Sixth Amendment, applied to the States through the Fourteenth Amendment, guarantees that '[i]n all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defense.'" *Kansas v. Ventris*, 556 U.S. 586, 590 (2009) (quoting U.S. Const. amend. VI). The Sixth Amendment right to counsel does not attach until "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689 (1972); *see also, Dowell v. Lincoln County*, 927 F.Supp.2d 741, 752-53 (E.D.Mo. 2013).

As noted above, plaintiff has not alleged that he was formally charged by defendants with resisting arrest by fleeing on February 24, 2021. Additionally, plaintiff has not alleged that

---

[7]*Miranda v. Arizona*, 384 U.S. 436 (1966).

he was denied a phone call when he specifically asked for consultation *with legal counsel* after his arrest on that date. Rather, he makes the bold statement that his Sixth Amendment rights were violated when he was denied a "free phone call" without elaborating on his claim.

In fact, review of Missouri Case.net shows that plaintiff was not charged with resisting arrest by fleeing until July 28, 2021, more than five months after he met with detectives at the Florissant Police Department. Plaintiff points out that he was already being held in custody on "other charges" prior to being transferred to Florissant Police Department for interview by defendants. Regardless, plaintiff's failure to properly plead a Sixth Amendment violation is fatal to his claims for relief. *See Massiah v. United States*, 377 U.S. 201, 205–207 (1964).

**E.  Excessive Bond Claims**

Plaintiff claims that he was subjected to excessive bond, in violation of the Eighth Amendment, because of the false charges in the probable cause statement. As noted above, however, plaintiff was already incarcerated in the Missouri Department of Corrections at the time he was taken into custody on a warrant issued by the Florissant Police Department. Additionally, although he is facing charges in two separate cases, his bond has been reduced in both cases since the day he was taken into custody. In *State v. Suber,* No. 21SL-CR03349-01 (21st Judicial Circuit, St. Louis County Court) plaintiff's bond was reduced to $10,000 (10% authorized), and in and *State v. Suber*, No. 21SL-CR04613-01 (21st Judicial Circuit, St. Louis County Court) plaintiff's bond was reduced to $60,0000, or payment of $6,000 in cash.

The Eighth Amendment provides that: "Excessive bail shall be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The primary function of bail is to safeguard the role of courts in adjudicating the guilt or innocence of defendants, and the only substantive limitation is that the "conditions of release or detention not be excessive in light of the perceived evil." *United States v. Salerno*, 481 U.S. 739,

754 (1987). In determining whether bail is unconstitutional, a defendant's mere financial inability to post an amount does not automatically indicate excessiveness. *White v. United States*, 330 F.2d 811, 814 (8th Cir. 1964).

There is no indication that plaintiff has attempted to reduce his bond once again in the circuit court, much less have his bond conditions reviewed by Missouri's appellate courts pursuant to Missouri's Supreme Court Rules. Missouri's Supreme Court Rules allow a person detained and unable to meet the conditions of release to have those conditions "reviewed by the court which imposed them." Mo. S.Ct. R. 33.05. If a court "sets inadequate or excessive conditions," the accused may seek a remedial writ in a higher court. Mo. S.Ct. R. 33.09. This Court may not review the issue of bond until a Missouri higher court has first reviewed the issue. *See* 28 U.S.C. § 2241; *Sacco v. Falke*, 649 F.2d 634, 636 (8th Cir. 1981); *Dickerson v. State of Louisiana*, 816 F.2d 220, 224 (5th Cir. 1987) (stating that pretrial petitions "are properly brought under 28 U.S.C. § 2241, which applies to persons in custody regardless of whether final judgment has been rendered and regardless of the present status of the case pending against him"). Accordingly, the Court will deny plaintiff's request to review his bond for failure to exhaust his state court remedies.

**F.  Judge Nicole Zellweger**

The Court has reviewed the complaint and finds that plaintiff fails to make any allegations against the Honorable Nicole Zellweger in this action. As noted above, liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Madewell*, 909 F.2d at 1208 (8th Cir. 1990); *see also* Martin, 780 F.2d at 1338 (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff). Thus, plaintiff cannot sustain a claim against defendant Zellweger in this action.

Even if plaintiff had made claims against the Honorable Nicole Zellweger, his claims would be subject to dismissal, as defendant Zellweger would be entitled to judicial immunity. Because a judicial officer, exercising the authority in which he or she is vested, should be free to act upon their own convictions, judicial immunity provides a judge with immunity from suit. *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity applies even when the judge is accused of acting maliciously or corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (stating that "judicial immunity is not overcome by allegations of bad faith or malice"). Moreover, "a judge will not be deprived of his immunity because the action he took was in error or was in excess of his authority." *Justice Network, Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019).

A judge's immunity from § 1983 actions bars a plaintiff's recovery in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, a judge does not have immunity for non-judicial actions. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982). *See also Justice Network, Inc.*, 931 F.3d at 760 (stating "that to determine whether an act is judicial, courts look to the particular act's relation to the general function normally performed by a judge").

Second, a judge is not immune from lawsuits based on actions taken in the complete absence of jurisdiction. *Duty*, 42 F.3d at 462. This is the case even if the judge's actions were judicial in nature. *Schottel*, 687 F.3d at 373. In the context of judicial immunity, however, the scope of the judge's jurisdiction is construed broadly. *Justice Network, Inc.*, 931 F.3d at 762.

"[A]n action – taken in the very aid of the judge's jurisdiction over a matter before him – cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13.

Plaintiff has failed to allege that Judge Zellweger acted in absence of her jurisdiction. Therefore, the allegations against Judge Zellweger are subject to dismissal.

### G. Claims Against the Remaining Defendants

Plaintiff alleges that St. Louis County, the City of Florissant and the Florissant Police Department Anti-Crime Unit are legally responsible for the individual defendants' unlawful behavior in this action.

A local governing body can be sued directly under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of defendants.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005)

("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." To do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate

indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff has failed to allege any of the aforementioned theories of liability with regard to defendants St. Louis County, the City of Florissant and the Florissant Police Department Anti-Crime Unit. Thus, these defendants are subject to dismissal.

Similarly, plaintiff cannot hold Tom Schneider, the Mayor of the City of Florissant, Herbert Benson, the Director of the St. Louis County Justice Center, and Timothy Lowery, the Chief of the Florissant Police Department, liable on theories of respondeat superior. *See Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018) (government officials may not be held liable for unconstitutional conduct under a theory of respondeat superior); s*ee also A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory").

Last, to the extent plaintiff is attempting to bring claims against unknown medical defendants at St. Louis County Justice Center, or John and Jane Does, he has not alleged enough information such that these defendants can be identified at this time or that the matter may proceed against them. *See Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). The claims against the John and Jane Does, as well as unnamed medical defendants will therefore be dismissed.

### H.  Racial Discrimination Claims

Plaintiff alleges that defendants engaged in "racial discrimination" against African American males and that there was an intentional deprivation of their rights. First and foremost,

plaintiff, acting pro se, may not bring claims on behalf of others.[8] Further, plaintiff fails to allege exactly how defendants violated his rights with respect to his race. The Court will not construct a claim for plaintiff with relation to his race discrimination claims. Moreover, his conclusory allegations that he is a victim of "racial discrimination" wholly lack factual support and are not entitled to the presumption of truth. *See Iqbal,* 556 U.S. at 678. Even pro se plaintiffs are required to allege facts in support of their claims, and the Court will not assume facts that are not alleged. *See Stone v. Harry,* 364 F.3d 912, 914-15 (8th Cir. 2004). Thus, plaintiff's race discrimination claims are subject to dismissal.

## I.   State Law Claims

Plaintiff has filed additional state law claims in this matter, including claims for abuse of process, malicious prosecution, defamation and intentional inflection of emotional distress. The Court will address each of these claims in turn.

### 1.   Abuse of Process/Malicious Prosecution

Plaintiff has not properly brought a case for malicious prosecution against an Unknown Prosecutor in this action. Plaintiff's conclusory statement that he was subject to "malicious prosecution" is not enough to substantiate a claim for relief in this case. Additionally, the doctrine of prosecutorial immunity bars plaintiff's claims against a prosecutor because it is well established that prosecutors have absolute immunity from claims for damages for acts performed within their official authority. *See Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987).

---

[8] *See* 28 U.S.C. § 1654 (stating that in all United States courts, "the parties may plead and conduct their own cases personally or by counsel"); *Jones ex rel. Jones v. Correctional Medical Services, Inc.,* 401 F.3d 950, 952 (8th Cir. 2005) (stating that "a non-attorney…may not engage in the practice of law on behalf of others"); *Iannaccone v. Law,* 142 F.3d 553, 558 (2nd Cir. 1998) (stating that "because pro se means to appear for one's self, a person may not appear on another's behalf in the other's cause…A person must be litigating an interest personal to him"); and *Lewis v. Lenc–Smith Mfg. Co.,* 784 F.2d 829, 830 (7th Cir. 1986) (stating that a person who is not licensed to practice law may not represent another individual in federal court).

Prosecutors are protected by absolute immunity from civil liability under § 1983 for prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268-71 (1993); *see also Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) ("The acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government.").  Prosecutorial immunity also applies to officials who perform prosecutorial functions such as initiating administrative or quasi-criminal proceedings. *See, e.g., Butz v. Economou*, 438 U.S. 478, 515 (1978); *see also Smith v. Power*, 346 F.3d 740 (7th Cir. 2003) (assistant city attorney who initiated proceedings to demolish a building under the city building code is entitled to prosecutorial immunity). When an attorney is absolutely immune from liability for prosecuting an individual, that attorney cannot be held liable for conspiring to violate that individual's constitutional rights. *Reasonover v. St. Louis County, Mo.,* 447 F.3d 569, 579-80 (8th Cir. 2006).

There is no question that the prosecutors who filed charges against plaintiff in his state court action are entitled to prosecutorial immunity. Plaintiff's "[a]llegations of improper motive in the performance of prosecutorial functions will not defeat immunity." *Powers v. City of Ferguson*, 229 F. Supp. 3d 894, 899 (E.D. Mo. Jan. 17, 2017). Moreover, "[p]ublic policy dictates that prosecutors be immune from common-law suits for malicious prosecution." *Jackson v. Tyson*, 2008 WL 5377877, at *4 (E.D. Mo. Dec. 19, 2008) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 422 (1976)). Without absolute immunity, the threat of civil rights suits would undermine the performance of a prosecutor's duties. *Id.* Accordingly, plaintiff's claim for malicious prosecution is subject to dismissal.

### 2.  Defamation

To the extent plaintiff is asserting that he was defamed by defendants, he has not indicated how exactly he was defamed. In other words, plaintiff has not identified a specific statement made by defendants that he believes to be slanderous.

The Court notes that an inmate cannot recover damages for defamation under 42 U.S.C. § 1983 "because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States." *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975). Furthermore, for purposes of § 1983, name calling is not a constitutional violation. *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). The Supreme Court has held that a person's interest in his reputation is not considered liberty or property protected by the due process clause. *Paul v. Davis*, 424 U.S. 693, 711-12 (1976). In other words, the "Supreme Court has made clear that federal courts are not to view defamatory acts as constitutional violations." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 400 (3d Cir. 2000). Thus, plaintiff cannot sue defendants under § 1983 for defamation even if he had identified the allegedly slanderous statements.

To the extent plaintiff is attempting to assert a claim of defamation under Missouri state law, plaintiff would have had to have identified not only the allegedly slanderous statement made by defendants, but also an additional five elements of the claim. These elements are: 1) publication of the statement, 2) that identifies the plaintiff, 3) that is false, 4) that is published with the requisite degree of fault, and 5) that damages the plaintiff's reputation. *Overcast v. Billings Mutual Insur. Co.,* 11 S.W.3d 62, 70 (Mo. 2000) (en banc).

Plaintiff has failed to allege all of the six elements of a defamation claim under Missouri law, including the requisite defamatory or slanderous statement. Accordingly, the Court finds that plaintiff's claim against defendants for defamation is subject to dismissal.

### 3.   Intentional Infliction of Emotional Distress

Plaintiff does not indicate exactly who he is suing for intentional infliction of emotional distress. Nonetheless, after review of the elements of the claim, the Court finds that plaintiff has failed to allege a claim for relief.

The necessary elements for a claim for intentional infliction of emotional distress are (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme or outrageous; and (3) the conduct must be the cause (4) of extreme emotional distress. *Thomas v. Special Olympics Mo., Inc.,* 31 S.W.3d 442, 446 (Mo. App. W.D. 2000).  The mental injury must be medically diagnosable and significant. *Fetick v. Am.  Cyanamid Co.,* 38 S.W.3d 415, 419 (Mo. banc 2001). Plaintiff has not alleged that he experienced medically diagnosable emotional distress as a result of defendants' actions. As such, plaintiff's claim for intentional infliction of emotional distress is subject to dismissal.

### J.  Motion to Stay - False Arrest and False Imprisonment Claims

Plaintiff filed a motion to stay this action on March 2, 2022, while his underlying criminal action relative to resisting arrest by fleeing was still pending in state court. Although plaintiff did not mention specifically which claims in his action he wished to stay, he mentioned the case of *Wallace v. Kato*, 549 U.S. 384 (2007), in his motion.

In *Wallace v. Kato*, the United States Supreme Court observed that it is common practice to stay § 1983 civil proceedings for false arrest and false imprisonment when a related criminal case is still pending. 549 U.S. 384, 393-94 (2007). The Court observed that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Id.* at 388. Furthermore, the Court instructed that where "a plaintiff files a false arrest claim before he has been convicted … it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Id.* at 393-94.

Otherwise, the Court and the parties are left to "speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the impending civil action will impugn that verdict, all this at a time when it can hardly be known what evidence the prosecution has in its possession." *Id.* at 393 (internal citation omitted).

Plaintiff's § 1983 action here is based on the same facts and circumstances giving rise to his criminal charges in *State v. Suber,* No. 21SL-CR03349-01 (21st Judicial Circuit, St. Louis County Court). Plaintiff's allegations of false arrest and false imprisonment relate to rulings that "will likely be made in a pending or anticipated criminal trial." *Wallace*, 549 U.S. at 393. As such, the principles of *Wallace v. Kato* dictate that further consideration of plaintiff's false arrest and false imprisonment claims brought pursuant to § 1983 should be stayed until the underlying criminal matter currently pending against plaintiff has been resolved through criminal appeals, as well as through post-conviction processes.

Additionally, a stay or abstention of the false arrest and false imprisonment claims until resolution of the criminal matter would be appropriate because a prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment, or sentence, unless the conviction or sentence is reversed, expunged, or called into question by issuance of a writ of habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995).

The Court agrees that is appropriate to stay plaintiff's § 1983 claims for false arrest and false imprisonment on the basis of *Wallace v. Kato*; however, plaintiff's other claims in his complaint are subject to dismissal, as set forth above.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [3] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.00 within **twenty-one (21) days** of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion to **STAY** this action [8] is **GRANTED IN PART.**

**IT IS FURTHER ORDERED** that plaintiff's claims for conspiracy, violation of the Eighth Amendment/excessive bail, violation of the First Amendment, violation of the Fifth Amendment, violation of the Sixth Amendment, racial discrimination, abuse of process, malicious prosecution, defamation and intentional infliction of emotional distress are **DISMISSED** as frivolous and for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants the United States Postal Service, United States Postal Service Task Force, Unknown Bussen, St. Louis County, City of Florissant, Florissant Police Department, Florissant Police Department Anti-Crime Unit, Tom Schnieder, Peggy Fowler, Karen Goodwin, John and Jane Does, Judge Nicole Zellweger, Herbert Benson, Unknown Medical Staff at the St. Louis County Justice Center and Timothy Fagan[9] are **DISMISSED** as frivolous and for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's claims for false arrest and false imprisonment, brought pursuant to 42 U.S.C. § 1983, in this case are **STAYED** pending final disposition of the criminal proceedings, including appellate and post-conviction proceedings,

---

[9]The Court is dismissing defendant Timothy Fagan from this action as it appears that plaintiff has misnamed him. The proper name for defendant is Timothy Lowery.

against plaintiff in his case of *State v. Suber,* No. 21SL-CR03349-01 (21st Judicial Circuit, St. Louis County Court). These claims remain against the following defendants: Timothy Lowery, Joseph Brockmeier, Dustin Chandler, Tyler Italiano, Steve Beekman and Anthony Mocca.

**IT IS FURTHER ORDERED** that plaintiff shall notify the Court in writing concerning the final disposition of the criminal charges pending against in *State v. Suber,* No. 21SL-CR03349-01.

**IT IS FURTHER ORDERED** that this case is **ADMINISTRATIVELY CLOSED** pending final disposition of the criminal proceedings, including appellate and post-conviction proceedings, against plaintiff in his cases of *State v. Suber,* No. 21SL-CR03349-01 (21st Judicial Circuit, St. Louis County Court). This case may be reopened by plaintiff filing a motion to reopen the case after such final dispositions.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [2] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that plaintiff's motion for discovery [5] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary injunction [6] is **DENIED**.

A separate Order of Partial Dismissal shall accompany this Memorandum and Order.


RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 13th day of July, 2022.